UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| NICHOLAS BART ELLIS,<br><br>    Plaintiff,<br><br>  vs.<br><br>SERGEANT A. NAVARRO;<br>CORRECTIONAL OFFICER F. JUAREZ;<br>CORRECTIONAL OFFICER B. GARDNER;<br>APPEALS COORDINATOR C.E. WILBER,<br><br>    Defendants. | Case No: C 07-5126 SBA (PR)<br><br>**ORDER RE MOTIONS IN LIMINE**<br><br>Dkt. 104, 105 |

    Plaintiff Nicholas Bart Ellis, an inmate at Pelican Bay State Prison ("PBSP"), brings the instant action under 42 U.S.C. § 1983 against several PBSP correctional officers for excessive force. A six-day jury trial is scheduled to commence on September 10, 2012. The parties are now before the Court on the parties' respective motions in limine. Dkt. 104, 105. In accordance with Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b), the Court, in its discretion, finds that these motions are suitable for resolution without oral argument, and therefore, enters the following rulings.

## I.   BACKGROUND

###   A.   FACTUAL SUMMARY

    The parties are familiar with the facts of this case, which are summarized herein only to the extent they are relevant to the instant motions. See Ellis v. Navarro, No. C 07-5126 SBA, 2011 WL 845902, at *2 (N.D. Cal. Mar. 8, 2011) (factual summary from order on motion to dismiss).

Plaintiff is serving a life sentence at PSPB following his conviction in 1995 under California Penal Code §§ 664(e)(1) and 187(a) for attempted murder of a police officer.  On August 14, 2006, Plaintiff was transported from PBSP's "B Facility" housing unit to the administrative segregation housing unit due to an incident earlier in the day involving two other guards.  Id.  While being transported, Plaintiff, who was handcuffed, shackled and naked, was severely beaten by PBSP Correctional Officers Anthony Navarro, Frederick Juarez and Brian Gardner.  Id.  Plaintiff suffered serious injuries to his face and body, including a left orbital "blowout" fracture.  Due to the severity of the beating, Plaintiff was hospitalized from August 14 to 18, 2006, at the Sutter Coast Hospital in Crescent City, California.  Id.

On October 5, 2007, Plaintiff, acting pro se, filed the instant action in this Court alleging that his constitutional rights under the Eighth Amendment were violated by Defendants' use of force.  As Defendants, Plaintiff named Sgt. Navarro, Correctional Officers Juarez and Gardner, and Appeals Coordinator Chris Wilber.[1]  Pursuant to the Court's scheduling order, Defendants filed a dispositive motion under Rule 12(b).  Dkt. 30.  Defendants argued that Plaintiff failed to exhaust his administrative remedies by submitting his appeal through each of the three levels of review.  After Defendants filed their motion, the Court appointed Thomas Loran and Marc Axelbaum of Pillsbury Winthrop Shaw Pittman LLP as counsel for Plaintiff, who submitted an opposition brief on behalf of Plaintiff.  Dkt. 33.  On March 8, 2011, the Court issued its order denying Defendants' motion.  Dkt. 41.

On May 12, 2011, the Court held a Case Management Conference and set the matter for trial to commence on January 18, 2012.  Dkt. 49.  Upon stipulated request of the parties, the Court continued the trial date to March 12, 2012.  Dkt. 53.  On February 27, 2012, the Court granted the parties' second request to continue the trial date, which the Court reset for September 10, 2012.  Dkt. 82.  In anticipation of trial, Plaintiff has filed nine motions in

---

[1] The parties stipulated to the dismissal of Defendant Wilber.  Dkt. 34.

limine, Dkt. 105, and Defendants have filed eight motions in limine, Dkt. 104. The Court discusses these motions in turn.

## II. LEGAL STANDARD

A motion in limine is a procedural mechanism to limit in advance testimony or evidence in a particular area. United States v. Heller, 551 F.3d 1108, 1111 (9th Cir. 2009). Under appropriate circumstances, a motion in limine may be used to exclude inadmissible or prejudicial evidence before it is offered at trial. See Luce v. United States, 469 U.S. 38, 40 n.2 (1984). "Motions in limine are well-established devices that streamline trials and settle evidentiary disputes in advance, so that trials are not interrupted mid-course for the consideration of lengthy and complex evidentiary issues." United States v. Tokash, 282 F.3d 962, 968 (7th Cir. 2002).

## III. PLAINTIFF'S MOTIONS IN LIMINE

### A. MOTION NO. 1: PRIOR CONVICTIONS

Plaintiff moves to exclude evidence of his juvenile adjudications and felony convictions, pursuant to Federal Rule of Evidence 609(b), on the grounds that they are more than ten years old, or alternatively, are irrelevant and are unduly prejudicial under Rule 403.[2] Pl.'s Mots. in Limine ("Pl.'s Mot.") at 1-4, Dkt. 105. Though Plaintiff does not identify the particular juvenile adjudications or prior convictions at issue, the only conviction which Defendants seek to admit is Plaintiff's 1995 conviction for attempted murder of a police officer. Def.'s Opp'n at 1, Dkt. 111.

Under Federal Rule of Evidence 609(a), evidence of a witness's prior conviction for a crime punishable by death or by imprisonment for over one year "must be admitted,

---

[2] Under Federal Rule of Evidence 402, only relevant evidence is admissible at trial. Fed. R. Evid. 402. Conversely, "[i]rrelevant evidence is not admissible." Id. "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. The district court is afforded broad discretion in determining the admissibility of evidence. See United States v. Espinoza-Baza, 647 F.3d 1182, 1189 (9th Cir. 2011).

1 subject to Rule 403, in a civil case or in a criminal case in which the witness is not a
2 defendant[.]" Evidence of such a conviction, however, is generally not admissible for
3 impeachment purposes if more than ten years has elapsed since the date of the conviction or
4 the release of the witness from confinement, whichever is later. Id. 609(b). Here, Rule
5 609(b)'s ten-year time limit is inapplicable because Plaintiff has been incarcerated since his
6 1995 conviction. See United States v. Rogers, 542 F.3d 197, 201 (7th Cir. 2008) (noting
7 that the ten-year clock under Rule 609(b) "starts at the witness's release from any physical
8 confinement, or in the absence of confinement, the date of the conviction"). Thus, the
9 question is whether the 1995 conviction should be excluded under Rule 403. Fed. R. Evid.
10 609(a).

11 Defendants contend that Plaintiff's 1995 conviction for attempted murder of a police
12 officer should be admitted, notwithstanding Rule 403, on the grounds that it is "highly
13 probative of the plaintiff's bias against peace officers." Defs.' Opp'n at 2. Defendants fail
14 to cite any decisional authority to support their conclusory argument. Nor do they specify
15 the facts and circumstances of Plaintiff's prior conviction or how they necessarily
16 demonstrate his personal animus toward prison correctional officers in general. In contrast,
17 given the serious nature of Plaintiff's offense, advising the jury of his prior conviction for a
18 violent felony would be unduly prejudicial under Rule 403. See United States v. Weiland,
19 420 F.3d 1062, 1078 (9th Cir. 2005) (acknowledging "the prejudicial nature of evidence of
20 prior criminal history"); see, e.g., Cotton v. City of Eureka, No. C 08-4386 SBA, 2010 WL
21 5154945, at *6 (N.D. Cal., Dec. 14, 2010) (granting motion in limine to exclude decedent's
22 prior convictions under Rule 403) (Armstrong, J.); accord Henderson v. Peterson, No.
23 C 07-2838 SBA, 2011 WL 2838169, at *3 (N.D. Cal., July 15, 2011) (Armstrong, J.).
24 Accordingly, Plaintiff's motion in limine no. 1 is GRANTED.

### B. MOTION NO. 2: PLAINTIFF'S PRISON DISCIPLINARY HISTORY

Plaintiff moves to exclude his prison disciplinary records on the ground that such evidence is inadmissible and unduly prejudicial character evidence. Pl.'s Mot. at 6.[3] The salient inquiry in an excessive force claim is "whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them." Graham v. Connor, 490 U.S. 386, 397 (1989). Thus, evidence of the plaintiff's past conduct "may be relevant and admissible in an excessive force case provided that the officer was aware of such information at the time of incident." Cotton, 2010 WL 5154945, at *6. But where the officers involved in the incident lack such knowledge, evidence of prior conduct is irrelevant and unduly prejudicial. Id. (granting motion in limine to exclude decedent's criminal record where the defendant officers were unaware of his criminal history at the time of the incident).

In the instant case, Defendants acknowledge that none of them was aware of Plaintiff's prior disciplinary history at the time they allegedly beat him. See Spown Decl. Ex. B (Navarro Depo.) at 38:25-39:17; id. Ex. C (Juarez Depo.) at 62:21-63:7; id. Ex. D (Gardner Depo.) at 47:17-48:7. Since Plaintiff's prison disciplinary history could not have informed Defendants' use of force, such evidence is of marginal probative value and its admission would be unduly prejudicial to Plaintiff. See Cotton, 2010 WL 5154945, at *6; Henderson, 2011 WL 2838169, at *4 (excluding prisoner's disciplinary record where defendants made no showing that the evidence was probative of whether the correctional officers' force was reasonable).

Citing Rule 404(b), Defendants argue that Plaintiff's disciplinary records are admissible to refute Plaintiff's contention that he did not attempt to attack one of the Defendants while restrained in handcuffs and leg irons. Rule 404(b) states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other

---

[3] The incidents at issue occurred on March 16, 1998, September 3, 2000, December 23, 2005, August 11, 2009 and February 14, 2010.

> purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Fed. R. Evid. 404(b). "The Ninth Circuit has held that evidence may be admitted pursuant to 404(b) if '(1) the evidence tends to prove a material point; (2) the other act is not too remote in time; (3) the evidence is sufficient to support a finding that defendant committed the other act; and (4) (in certain cases) the act is similar to the offense charged.'" United States v. Cherer, 513 F.3d 1150, 1157 (9th Cir. 2008) (quoting in part United States v. Romero, 282 F.3d 683, 688 (9th Cir. 2002)). If evidence satisfies Rule 404(b), "the court must then decide whether the probative value is substantially outweighed by the prejudicial impact under Rule 403." Id. The proponent of the disputed evidence bears the burden of demonstrating its admissibility under the foregoing test. See United States v. Montgomery, 150 F.3d 983, 1001 (9th Cir. 1998).

Defendants do not recite, let alone make any argument, regarding the four-element test for admitting other acts evidence under Rule 404(b). See Defs.' Opp'n at 3-6. In the absence of any relevant argument or analysis, the Court is unable to render an informed decision on the issue. See Indep. Towers of Wash. v. Wash., 350 F.3d 925, 929 (9th Cir. 2003) ("Our adversarial system relies on the advocates to inform the discussion and raise the issues to the court."). Nonetheless, even if the evidence passed muster under Rule 404(b), the probative value of such evidence is substantially outweighed by its prejudicial impact on Plaintiff. Evidence that Plaintiff may have been combative at PBSP is, at best, marginally probative of his ability to attack staff while restrained—particularly where Defendants have made no showing that the other incidents were analogous to the incident that forms the basis of this lawsuit. In contrast, such evidence could potentially mislead and distract jurors by causing them to focus on matters other than the facts and circumstances confronting the Defendants at the time of the incident. See Graham, 490 U.S. at 397. Such evidence also could trigger mini-trials concerning each of the incidents as well as necessitate the use of limiting instructions. For these reasons, the Court concludes that Plaintiff's disciplinary records should not be admitted under Rule 403. See

Seals v. Mitchell, No. C 04-3764 NJV, 2011 WL 1399245, at *6 (N.D. Cal., Apr. 13, 2011) ("The Court grants Plaintiff's motion [in limine] because Plaintiff's prison disciplinary record is not relevant, is prejudicial, constitutes inadmissible character evidence of other wrongs or acts, and is inadmissible hearsay.") (citing Fed. R. Evid. 402, 403, 404(b) & 802). Accordingly, Plaintiff's motion in limine no. 2 is GRANTED.

### C. MOTION NO. 3: CURRENT CONVICTION AND PRISON SENTENCE

Pursuant to Rule 403, Plaintiff moves to exclude any evidence of or reference to his current prison sentence or incarceration based on his 1995 conviction on the basis that its prejudicial effect would substantially outweigh its probative value. Pl.'s Mot. at 5. Defendants offer no specific basis admitting this evidence, and instead, merely incorporate by reference their arguments in opposition to Plaintiff's motion in limine no. 1 to exclude his prior convictions. Thus, for the same reasons stated above, Plaintiff's motion in limine no. 3 is GRANTED.

### D. MOTION NO. 4: RESTRAINTS

Plaintiff seeks an in limine order permitting him to appear at trial in non-prison attire and without restraints. Pl.'s Mot. at 5. Defendants correspondingly seek an in limine order that Plaintiff remain shackled at trial. Defs.' Mots. in Limine ("Defs.' Mot.") at 11 (Mot. in Limine No. 7).

#### 1. Non-Prison Attire

Plaintiff seeks leave to appear in non-prison attire at trial in order to avoid potential prejudice. Defendants contend that the jury will be aware that Plaintiff is a prisoner, and therefore, he will not be prejudiced by appearing in prison attire. At the same time, however, Defendants offer no compelling reason why Plaintiff should not be allowed to appear in non-prison attire when he appears before the jury. Therefore, Plaintiff's motion to appear in non-prison attire is GRANTED.

#### 2. Restraints

In a civil action involving a prisoner, courts should, as a matter of fundamental fairness, be wary of requiring a litigant to appear in restraints. See Tyars v. Finner, 709

F.2d 1274, 1284-85 (9th Cir. 1983). While trial courts have discretion to order a party shackled, such discretion is informed by a two-part test. Morgan v. Bunnell, 24 F.3d 49, 50 (9th Cir. 1994). "First, the court must be persuaded by compelling circumstances that some measure was needed to maintain the security of the courtroom. Second, the court must pursue less restrictive alternatives before imposing physical restraints." Id. (internal quotations and citations omitted).

The Court finds that Defendants have made a sufficient showing to establish that Plaintiff presents a potential security risk based on his background and involvement in various incidents at PBSP. At the pretrial conference, Plaintiff's counsel acknowledged that in light of such concerns, they were amenable to Defendants' proposal that Plaintiff be restrained by ankle restraints (which are not visible to jurors). Accordingly, Plaintiff's motion in limine to appear at trial without restraints is DENIED.

### E. MOTION NO. 5: PAYMENT OF MEDICAL EXPENSES

Plaintiff moves to exclude evidence that the CDCR paid for his medical treatment for injuries incurred as a result of the incident. "Under the collateral source rule, benefits received by the plaintiff from a source collateral to the defendant may not be used to reduce that defendant's liability for damages." McLean v. Runyon, 222 F.3d 1150, 1155-1156 (9th Cir. 2000) (internal quotations marks and citations omitted); Gill v. Maciejewski, 546 F.3d 557, 564-65 (8th Cir. 2008) (applying collateral source rule in section 1983 action). The rationale underlying the collateral source rule is to prevent the defendant from receiving a windfall by avoiding liability for damages suffered by the plaintiff as a result of the defendant's conduct. See Siverson v. United States, 710 F.2d 557, 560 (9th Cir. 1983) (finding that the purpose of collateral source doctrine is to prevent the defendant from receiving a windfall, irrespective of whether application of the doctrine results in a double recovery for the plaintiff); Chavez v. Poleate, No. No. 2:04-CV-1104 CW, 2010 WL 678940, at 2 n.2 (D. Utah Feb. 23, 2010) (applying collateral source rule in a prisoner's § 1983 action against prison guard where state paid for plaintiff's medical expenses).

1    Defendants contend that the collateral source doctrine applies only where the injured
2 party paid for the insurance, program or policy that paid the benefit, and that because
3 Plaintiff is a prisoner, he could not have contributed to the state fund used to pay for his
4 medical care. Defs.' Opp'n at 8-9. This Court, however, recently rejected an identical
5 argument made by correctional officer defendants in a prisoner civil rights action. See
6 Henderson, 2011 WL 2838169, at *4-5 (granting plaintiff's motion in limine to exclude
7 evidence that the CDCR paid for his medical treatment for injuries incurred as a result of
8 defendants' use of force). Notwithstanding Henderson, the Court finds that whether
9 Plaintiff's medical expenses were paid by the CDCR is not probative of any factual matter
10 to be decided at trial, and that the admission of such evidence would likely confuse the jury
11 regarding whether Plaintiff has already been compensated for some of his damages. See
12 Fed. R. Evid. 402, 403. Accordingly, Plaintiff's motion in limine no. 5 is GRANTED.

### F.  MOTION NO. 6: EXPERT TESTIMONY OPINING ON WITNESS CREDIBILITY

Plaintiff seeks to preclude any testimony from Defendants' retained use-of-force expert, William Sullivan, "regarding the credibility of other witnesses in the case or opining on any facts derived from his credibility assessments of other witnesses at trial." Pl.'s Mot. at 7. For their part, Defendants "agree that the expert witnesses [on both sides] should not be permitted to testify as to the credibility of the parties' or witnesses' account of the facts." Defs.' Opp'n at 10. Nonetheless, the parties appear to disagree whether Mr. Sullivan may offer opinions that are derived from his assessments of witness' credibility. Pl.'s Reply at 7. In that regard, Plaintiff points to deposition testimony by Mr. Sullivan where he acknowledged that the reasonableness of the force applied against Plaintiff ultimately depends on whose account of the incident is more credible. Id.

"[I]t is the exclusive function of the jury to determine the credibility of the witnesses, resolve evidentiary conflicts and draw reasonable inferences from proven facts." Bruce v. Terhune, 376 F.3d 950, 957 (9th Cir. 2004) (internal quotations and citations omitted). As such, it is plain that Mr. Sullivan may not opine on whether another witness is credible. United States v. Komisaruk, 885 F.2d 490, 494 (9th Cir. 1989) ("We have held

that expert testimony cannot be offered to buttress credibility."); Engesser v. Dooley, 457 F.3d 731, 736 (8th Cir. 2006) ("An expert may not opine on another witness's credibility.").

The above notwithstanding, an expert is not foreclosed from offering an opinion based on a set of facts assumed to be credible—provided the opinion is based on the expert's "knowledge, skill, experience, training, or education." Fed. R. Evid. 702; see United States v. Romo, 413 F.3d 1044, 1049 (9th Cir. 2005). For example, in United States v. Collins, 78 F.3d 1021 (6th Cir. 1996), the defendant argued that the district court abused its discretion in allowing the government to use "lengthy recapitulations of the evidence" in its questions to its expert witness in criminal case, claiming that such questioning amount to "an improper use of an expert to make credibility determinations[.]" Id. at 1037. The Sixth Circuit rejected defendant's contention and held that the expert "did not comment on the truthfulness of any of the witnesses." Id. The court explained that "although the agent was asked to assume the correctness of certain facts in the hypotheticals given to him, the credibility of the testimony underlying those hypotheticals was not withdrawn from proper independent determination by the jury." Id.[4] Therefore, Mr. Sullivan's opinions are not subject to exclusion simply because they may be based on assumptions of another witness's credibility; provided, of course, that he does not render an opinion on whether the witness is credible.

In sum, Plaintiff's motion in limine no. 6 is GRANTED IN PART and DENIED IN PART. No expert may offer opinion testimony regarding the credibility of another witness. However, the parties' experts are not foreclosed from offering opinion testimony predicated upon an assumed set of facts, provided that such opinion is based on expert's knowledge, skill, experience, training or education.

---

[4] Purported infirmities in the factual basis of an expert's opinions are germane to the weight, not the admissibility, of those opinions. See Hangarter v. Provident Life and Acc. Ins. Co., 373 F.3d 998, 1017 n.14 (9th Cir. 2004) ("The factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination.") (brackets, internal quotations and citation omitted).

### G. MOTION NO. 7: EXTRINSIC EVIDENCE REGARDING DANIEL VASQUEZ'S EMPLOYMENT

Daniel Vasquez is Plaintiff's expert on use-of-force. He is the former Warden of San Quentin State Prison and Soledad State Prison, both of which are operated by the CDCR. Mr. Vasquez testified during his deposition that he voluntarily left the CDCR for a "better-paying job." Roman Decl. Ex. H at 72:17-20. Defendants insinuate, however, that the actual reason he resigned was due to allegations of misconduct. In particular, they point out that while at San Quentin, he was accused of bias by certain African-American CDCR employees and of failing to reimburse the CDCR for personal telephone calls. Defs.' Opp'n at 12. At trial, Defendants will seek to present testimony from David Tristan, Mr. Vasquez's former supervisor at San Quentin from 1990 to 1994, regarding those matters, and to cross-examine Mr. Vasquez regarding his job performance as a warden and purported misconduct leading to his resignation in order to show that he is biased against the CDCR. Id. As a result, Plaintiff seeks an in limine order excluding extrinsic evidence regarding Mr. Vasquez's alleged misconduct and departure from the CDCR on the ground that it is improper character evidence. Pl.'s Mot. at 12.

The starting point for the Court's analysis is Rule 608(b), which provides:

> **(b) Specific Instances of Conduct**. Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of:
>
> (1) the witness; or
>
> (2) another witness whose character the witness being cross-examined has testified about.

Fed. R. Evid. 608(b). In short, "[t]hat Rule allows a cross-examiner to impeach a witness by asking him about specific instances of past conduct, other than crimes covered by Rule 609, which are probative of his veracity or 'character for truthfulness or untruthfulness.' The Rule limits the inquiry to cross-examination of the witness, however, and prohibits the cross-examiner from introducing extrinsic evidence of the witness' past conduct."

**1** United States v. Abel, 469 U.S. 45, 55 (1984) (quoting in part Fed. R. Evid. 608(b))
**2** (footnote omitted).
**3**       Defendants do not dispute that extrinsic evidence is inadmissible to attack Mr.
**4** Vasquez's character, but instead, argue that such evidence is admissible to show bias. The
**5** Advisory Committee Notes following the 2003 amendments to Rule 608 note that the
**6** admissibility of extrinsic evidence offered "for other grounds of impeachment (such as
**7** contradiction, prior inconsistent statement, bias and mental capacity)" is governed by Rules
**8** 402 and 403. See also United States v. Ray, 731 F.2d 1361, 1364 (9th Cir. 1984) ("Rule
**9** 608(b) does not bar introduction of evidence to show that the witness is biased. It regulates
**10** only the admissibility of evidence offered to prove the truthful or untruthful character of a
**11** witness."). The Court is not persuaded, however, that the proposed extrinsic evidence is
**12** probative of Mr. Vasquez's purported bias against the CDCR. Defendants have offered no
**13** argument or evidence that Mr. Vasquez was subject to any disciplinary actions by the
**14** CDCR, that he was involuntarily terminated or resigned under threat of termination, or that
**15** he bears any grudge against his former employer. In contrast, the admission of evidence or
**16** testimony concerning allegations of employee complaints and unreimbursed telephone calls
**17** occurring decades ago will distract and possibly confuse the jury with marginally relevant
**18** matters and consume time, thereby unnecessarily delaying the proceedings. See Fed. R.
**19** Evid. 402, 403. Accordingly, Plaintiff's motion in limine no. 7 is GRANTED.

**20/21**     **H.**    **MOTION NO. 8: QUESTIONS REGARDING DANIEL VASQUEZ'S EMPLOYMENT WITH THE CDCR**

**22**       Similar to motion in limine no. 7, Plaintiff seeks an in limine order precluding
**23** Defendants from cross-examining Mr. Vasquez regarding the aforementioned alleged
**24** controversies which occurred during his employment with the CDCR. Pl.'s Opp'n at 12.
**25** As this Court explained in Henderson, "[i]nformation that Mr. Vasquez resigned from the
**26** CDCR due to concerns regarding his performance and conduct certainly may bear upon his
**27** bias against the CDCR." 2011 WL 2838169, at *7. But before such questioning may
**28** occur, Defendants must first establish a proper foundation for their proposed inquiry. Id.

1 Since the defense in <u>Henderson</u> failed to provide such a foundation, coupled with the
2 remoteness in time of alleged incidents, the Court precluded the defendants "from cross-
3 examining Mr. Vasquez regarding any of the specific instances of misconduct allegedly
4 leading to his departure from the CDCR." <u>Id.</u> (citing <u>United States v. Lo</u>, 231 F.3d 471,
5 483 (9th Cir. 2000) and Fed. R. Evid. 403).

6 In the instant case, Defendants likewise have failed to provide a foundation for
7 cross-examining Mr. Vasquez regarding his purported bias against the CDCR. As in
8 <u>Henderson</u>, Defendants provide no evidence regarding the employee complaints, other than
9 Mr. Vasquez's acknowledgement that some complaints were made. As for the issues
10 relating to the telephone calls and reimbursements, Defendants provide no evidentiary basis
11 to support those claims—which Mr. Vasquez disputes. In any event, it is unclear how those
12 alleged incidents, which occurred during the 1990's, are probative of Mr. Vasquez's
13 alleged bias against the CDCR. As noted, there is no evidence that the CDCR took or
14 threatened to take any adverse employment action against Mr. Vasquez as a result of those
15 matters, or that he believed that the CDCR was planning to do so. Thus, as in <u>Henderson</u>,
16 Plaintiff's motion in limine no. 8 is GRANTED.[5]

**I.  MOTION NO. 9: ADVERSE INFERENCE INSTRUCTION**

**1.  Background**

19 Plaintiff seeks an adverse inference instruction concerning evidence that was not
20 produced until after the close of discovery. Pl.'s Mot. at 12. On August 17, 2011, Plaintiff
21 served third party PBSP (which also is represented by Defendants' counsel) with a
22 subpoena for certain documents which included a request for all documents "including, but
23 not limited to, logs, recordings, or [communications concerning] August 14, 2006 that were
24 written, created or prepared by [PBSP staff] working in observation towers on August 14,
25 2006." <u>See</u> Spowhn Decl. Ex. G (Request No. 65). The subpoena also included other,
26 more generalized requests calling for logs from Control Tower #1 (the guard tower closest

---

[5] Of course, Defendants are free to probe Mr. Vasquez's bias on grounds other than those raised by Plaintiff's motion in limine.

to the location of the subject use of force incident) from August 14, 2006. The subpoena directed PBSP to produce all such documents to Plaintiff on or before September 18, 2011.

On January 19, 2012, Plaintiff's counsel deposed James Mullen, the former PBSP officer who was working in Control Tower #1 at the time of the use of force incident. Mr. Mullen has retired and now resides in Las Vegas, Nevada. Mr. Mullen testified that he did not see the subject use of force incident because he was watching two other officers inspect a food truck in the vehicle "sallyport" (entryway) adjacent to Control Tower #1. See Spowhn Decl., Ex. H (Mullen Depo.) at 74:1-22, 79:7-20, 107:20-108:19. According to Plaintiff, had Defendants' counsel timely produced the Tower # 1 log before the deposition, Plaintiff would have questioned Mr. Mullen about why the log contains detailed entries about various vehicles entering and leaving the sally port, yet made no mention of the alleged food truck that distracted him that day.

In light of Defendants' late disclosure of the Tower # 1 log, Plaintiff requests an adverse inference instruction stating that: (1) Defendants did not produce the Tower #1 log to Plaintiff until five months after the deposition of James Mullen; (2) because Mr. Mullen lives in Nevada, he cannot be compelled to appear at the trial and answer questions; and therefore, (3) that it is likely that, had Plaintiff been able to question Mr. Mullen regarding the Tower #1 log, his testimony regarding what he saw on the roadway where the use of force incident occurred would be unfavorable to Defendants and also to Mr. Mullen's credibility. Pl.'s Mot. at 14.

### 2. Analysis

A district court has the discretion to impose sanctions based on its power "to make discovery and evidentiary rulings conducive to the conduct of a fair and orderly trial." Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp., 982 F.2d 363, 368 (9th Cir.1992) (internal citation omitted). This discretion includes giving an adverse inference instruction where a party is grossly negligent in failing to produce discovery in a timely manner. See Reilly v. Natwest Markets Group, Inc., 181 F.3d 253, 268 (2d Cir. 1999). The giving of an adverse inference instruction is "based on two rationales, one evidentiary and one not."

Millenkamp v. Davisco Foods Int'l, Inc., 562 F.3d 971, 981 (9th Cir. 2009) (quoting in part Akiona v. United States, 938 F.2d 158, 161 (9th Cir. 1991)). The evidentiary rationale is predicated upon "the fair inference . . . that the evidence would have weighed against the party who held it back." Computer Assocs. Int'l, Inc. v. Am. Fundware, Inc., 133 F.R.D. 166, 170 (D. Colo. 1990). "The second rationale has to do with its prophylactic and punitive effects—allowing the trier of fact to draw an adverse inference presumably deters parties from destroying relevant evidence before it can be introduced at trial." Millenkamp, 562 F.3d at 981 (internal quotations and brackets omitted).

Defendants contend that they cannot be held responsible for any delay in producing the tower log, as such document was in the possession of PBSP, which is not a party to the action. Plaintiff counters that Defendants and PBSP share the same counsel, and therefore, Defendants should suffer the consequences of their shared counsel's untimely production of the tower log. However, the law is clear that in a section 1983 action, the actions of individual officers and their employers are considered separate and distinct. See Monell v. N.Y.C. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978) (no respondeat superior liability in section 1983 actions). Moreover, Plaintiff cites no authority holding that the discovery misconduct of a third party may be imputed to a party simply because they share the same attorney. Such a rule would be inconsistent with the rationale underlying an adverse inference instruction; i.e., namely, the assumption that a party which has destroyed or withheld a document did so because it was adverse, and to deter a party from destroying or withholding relevant evidence. Millenkamp, 562 F.3d at 981. Where, as here, neither rationale is implicated, an adverse inference instruction is not warranted. Accordingly, Plaintiff's motion in limine no. 9 is DENIED.

### IV. DEFENDANTS' MOTIONS IN LIMINE

#### A. MOTION NO. 1: CODE OF SILENCE

Defendants move to preclude Plaintiff from offering any evidence regarding an alleged "code of silence" at PBSP. Defs.' Mots. at 2. Plaintiff states that he does not intend to offer any such evidence or argument. Pl.'s Opp'n at 1. Accordingly, Defendants' motion in limine no. 1 is DENIED as moot.

#### B. MOTION NO. 2: PROPENSITY TO LIE

Defendants move to exclude "all evidence regarding allegations that officers at PBSP generally lie, conspire, or participate in cover-ups to protect fellow officers, including evidence regarding whether officers have ever witnessed another officer at PBSP use excessive force." Defs.' Mot. at 5 (emphasis added). Plaintiff does not oppose Defendants' request to the extent that it prohibits evidence that officers at PBSP "generally or characteristically" lie, conspire, or participate in cover-ups. Pl.'s Opp'n at 2. Accordingly, Defendant's motion in limine no. 2 is GRANTED.[6]

#### C. MOTION NO. 3: DANIEL VASQUEZ

Defendants move to exclude the Plaintiff's use of force expert, Daniel Vasquez, from testifying about the credibility of Plaintiff, Defendants, any of the officers involved in the subject incidents, and/or any other person. As Plaintiff does not intend to elicit such testimony from Mr. Vasquez, Defendants' motion in limine no. 3 is DENIED as moot.

---

[6] However, Plaintiff reserves the right to present evidence and testimony that certain witnesses, including Defendants, participated in a cover-up with respect to the incident that forms the basis of this case. Id. In their reply brief, Defendants contend that their second motion is limine is aimed at precluding Plaintiff from "the use of inflammatory and prejudicial terms such as 'conspiracy,' 'cover-up,' 'code of silence,' and 'green wall.'" Defs.' Reply at 2. However, Defendants did not make this specific request in their moving papers, and it is improper for them to present new arguments in their reply. See Coleman v. Quaker Oats Co., 232 F.3d 1271, 1289 n.4 (9th Cir. 2000) ("[I]ssues cannot be raised for the first time in a reply brief.").

### D. MOTION NOS. 4-6: VARIOUS DOCUMENTS

Plaintiff has removed all of the documents at issue in Defendants' motions in limine nos. 4 through 6. Thus, Defendants' motions in limine nos. 4 through 6 are DENIED as moot.

### E. MOTION NO. 7: SHACKLING

As set forth above in connection with Plaintiff's motion in limine no 4, the Court will require that Plaintiff remain shackled at trial. Accordingly, Defendants' motion in limine no. 7 is GRANTED.

### F. MOTION NO. 8: NAVARRO'S CHANGE IN EMPLOYMENT

Defendants move to exclude all evidence of Defendant Navarro's recent change in employment status. According to Defendants, their counsel only recently learned that Navarro no longer is employed by the CDCR, but deny that his departure is in any way related to the instant litigation. Defendants indicate that they are in the process of obtaining Navarro's personnel file from PBSP, and propose that the Court review those documents in camera. Plaintiff opposes Defendants' motion in limine on the grounds that Defendants failed to meet and confer prior to making said request, and contends that he first learned of Navarro's change in employment status from reviewing Defendants' motion in limine.

The parties should be aware of this Court's Standing Orders, which require the parties to meet and confer in good faith prior to presenting any motion or request to the Court for resolution. Since it is apparent that they have failed to comply with this requirement with respect to Navarro's change in employment, the Court declines to consider Defendants' motion in limine at this time. If, after meeting and conferring in good faith regarding this matter the parties are unable to agree, Defendants may seek leave of Court to resubmit a request for an in limine order excluding or limiting evidence or testimony relating to Navarro's employment status with the CDCR, within seven days of the date this Order is filed. Thus, Defendants' motion in limine no. 8 is DENIED without prejudice.

**V.     CONCLUSION**

For the reasons stated above,

IT IS HEREBY ORDERED THAT:

1.     Plaintiffs' Motion in Limine No. 1 to exclude evidence of his juvenile adjudications and felony convictions is GRANTED.

2.     Plaintiffs' Motion in Limine No. 2 to exclude his prison disciplinary records is GRANTED.

3.     Plaintiffs' Motion in Limine No. 3 to exclude any evidence of or reference to Plaintiff's current prison sentence or incarceration is GRANTED.

4.     Plaintiffs' Motion in Limine No. 4 is GRANTED IN PART and DENIED IN PART.  Plaintiff is granted leave to appear in non-prison attire, but he shall remain shackled.

5.     Plaintiffs' Motion in Limine No. 5 to exclude evidence or reference to the CDCR having paid for Plaintiff's medical expenses is GRANTED.

6.     Plaintiffs' Motion in Limine No. 6 is GRANTED IN PART and DENIED IN PART.  No expert may offer opinion testimony regarding the credibility of another witness.  However, the parties' experts are not foreclosed from offering opinion testimony predicated upon an assumed set of facts, provided that such opinion is based on the expert's knowledge, skill, experience, training or education.

7.     Plaintiffs' Motion in Limine No. 7 to exclude extrinsic evidence regarding Mr. Vasquez's alleged misconduct and departure from the CDCR is GRANTED.

8.     Plaintiffs' Motion in Limine No. 8 to preclude Defendants from cross-examining Daniel Vasquez regarding any of the specific instances of misconduct allegedly leading to his departure from the CDCR is GRANTED.

9.     Plaintiffs' Motion in Limine No. 9 for an adverse inference instruction is DENIED.

10.     Defendants' Motion in Limine No. 1 to exclude evidence of or reference to a "code of silence" is DENIED as moot.

11. Defendants' Motion in Limine No. 2 to exclude all evidence regarding allegations that officers at PBSP generally lie, conspire, or participate in cover-ups is GRANTED.

12. Defendants' Motion in Limine No. 3 to preclude Daniel Vasquez from offering opinion testimony regarding the credibility of other witnesses is DENIED as moot.

13. Defendants' Motion in Limine Nos. 4 through 6 to exclude various documents are DENIED as moot.

14. Defendants' Motion in Limine No. 7 to have Plaintiff shackled at trial is GRANTED.

15. Defendants' Motion in Limine No. 8 to exclude evidence of or reference to the reasons for Navarro's change of employment is DENIED without prejudice.

16. This Order terminates Docket 104 and 105.

IT IS SO ORDERED.

Dated: August 17, 2012

_____
SAUNDRA BROWN ARMSTRONG
United States District Judge